Not surprisingly, in the first published decision addressing the merits of one of the cookie-cutter complaints substantively identical to this one, a critical basis for the judgment of dismissal was that the complaint had not "been brought derivatively." Mutchka v. Harris, No. SACV0534JVSANX, 2005 WL 1414304, *1,  **1, 3-6 (C.D. Cal. June 8, 2005) (applying Massachusetts law).[8]  The court there rejected plaintiffs' attempts to distinguish mutual funds from stocks and reasoned that plaintiffs' "injury is identical to every other investor's in that their pro rata share of the fund allegedly would have been more valuable had Defendants participated in the settlements." Id. at *6.  As in Mutchka, plaintiff here has asserted, at most, claims for injury to the Funds alone; there is no claim of distinct harm to any shareholder, including plaintiff.  Such claims cannot be brought directly by shareholders and, accordingly, they should be dismissed.

### B.    Counts I, II, III And V Also Fail Because Plaintiff Has Not Complied With Federal Rule Of Civil Procedure 23.1

Even had plaintiff brought these counts derivatively on behalf of the Funds, his Complaint utterly fails to meet the demand requirements of Federal Rule of Civil Procedure 23.1. Rule 23.1 requires plaintiff to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." See Fed. R. Civ. P. 23.1.  This demand requirement "represents a strong statement of public policy" against "the maintenance of strike suits by minority shareholders which impede corporate management at great cost and to little purpose

---

[8]    Massachusetts law is similar to the law in both Maryland and Delaware in that, to bring a direct action, plaintiff must suffer "an injury separate and distinct from that suffered by other shareholders." Mutchka, 2005 WL 1414304, at *5 (internal quotation omitted).

except the enrichment of counsel." Lewis v. Anselmi, 564 F. Supp. 768, 772 (S.D.N.Y. 1983);

accord Markowitz v. Brody, 90 F.R.D. 542, 561 (S.D.N.Y. 1981).[9]

Under Delaware and Maryland law, a derivative action on behalf of a corporation

requires that shareholders either allege that their demand on the board to bring suit was refused

or plead with particularity why demand would be futile. See Levine v. Smith, 591 A.2d 194, 200

(Del. 1991), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000);

Werbowsky, 766 A.2d at 134-35 (Md. 2001). Plaintiff has alleged neither.

Rule 23.1 also requires that plaintiff verify his Complaint, stating that he was a

shareholder at the time of the transaction about which he complains and that the action is not a

collusive one to confer jurisdiction on a court. See Fed. R. Civ. P. 23.1. Again, plaintiff has

done none of this.

Here, plaintiff does not even try to comply with Rule 23.1. He does not purport to

bring a derivative claim, did not verify the Complaint, does not allege that he was a shareholder

of each of the funds at issue, does not allege that he made demand on the directors, and does not

explain why making such demand would have been futile. Accordingly, all of plaintiff's claims,

other than Count IV, should be dismissed as a matter of law.

## POINT IV

### COUNT III SHOULD BE DISMISSED BECAUSE
### IT FAILS TO STATE A CLAIM UNDER SECTION 36(A) OF THE ICA

In Count III, plaintiff alleges that all defendants violated Section 36(a) of the ICA

by breaching their fiduciary duties. See Compl. ¶¶ 37-40. Even if this claim properly had been

---

[9]     Again, the demand requirement is governed by state law. See Kamen, 500 U.S. at 108.

brought as derivative action, it nonetheless would still fail because Congress created no private right of action under Section 36(a) of the ICA.

A.    **Under Recent Supreme Court Precedent, Courts Must Focus On Statutory Text And Structure In Determining Whether Congress Intended To Confer A Private Right Of Action**

By its terms, Section 36(a) does not grant an express cause of action to private litigants. See 15 U.S.C. § 80a-35(a). Thus, for plaintiff's claim to survive a motion to dismiss, plaintiff must establish that an implied private right of action exists under Section 36(a) of the ICA. Plaintiff cannot meet this extraordinary burden.

The determination of whether a private right of action exists under a federal statute is "limited solely to determining whether Congress intended to create [a] private right of action." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979). As the Supreme Court recently explained:

> [P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001) (internal citations omitted). Thus, while there was once a time when some courts would imply private rights of action to effectuate statutory purposes -- even where the statute itself manifested no Congressional intent to create such a right -- those decisions belong to a now discredited "ancien regime." Id. at 287; see also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 67 (2001) ("[W]e have retreated from our previous willingness to imply a cause of action where Congress has not provided one"). Today the law in this circuit is clear: absent an express right of action, the presumption is "that

-20-

Congress did not intend one." Olmsted v. Pruco Life Ins. Co. of New Jersey, 283 F.3d 429, 432

(2d Cir 2002). There is every reason not to depart from that presumption in the case of Section

36(a).

In a series of recent decisions, the Supreme Court has made clear that, in

determining legislative intent, courts must focus on the "text and structure" of the statute.

Sandoval, 532 U.S. at 288. As the Court explained, "[w]here the text and structure of a statute

provide no indication that Congress intends to create new individual rights, there is no basis for a

private suit . . . ." Gonzaga Univ. v. Doe, 536 U.S. 273, 286 (2002); see also Olmsted, 283 F.3d

at 432 (relying on Sandoval's renewed focus on statutory "text and structure" in rejecting claim

that ICA §§ 26(f) and 27(i) created a private right of action).

To confer individual rights, Congress must use "rights-creating language."

Sandoval, 532 U.S. at 288. That is, the text of the statute must be phrased "with an unmistakable

focus on the benefited class." Gonzaga, 536 U.S. at 284 (emphasis in original) (internal

quotations omitted). By contrast, "[s]tatutes that focus on the person regulated rather than the

individuals protected create no implication of an intent to confer rights on a particular class of

persons." Sandoval, 532 U.S. at 289 (internal quotations omitted). Moreover, "even where a

statute is phrased in such explicit rights-creating terms," a plaintiff attempting to sue under an

implied right of action "still must show that the statute manifests an intent 'to create not just a

private right but also a private remedy.'" Gonzaga, 536 U.S. at 284 (quoting Sandoval, 532 U.S.

at 286) (emphasis in original).

Thus, a court deciding whether an implied right of action exists must consider,

among other things, whether Congress provided its own "remedial scheme" in the statute.

Sandoval, 532 U.S. at 290. As the Supreme Court recently explained, the "express provision of

one method of enforcing a substantive rule suggests that Congress intended to preclude others."

Id.; see also Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"). This is especially true where Congress has granted an express private right of action in other parts of the statutory scheme. See, e.g., Touche Ross, 442 U.S. at 571-74 (declining to imply private right of action under Section 17(a) of the Exchange Act, in part, because "§ 17(a) is flanked by provisions . . . that explicitly grant private causes of action").

Implementing these precedents, in Olmsted, 283 F.3d 429, the Second Circuit, held that no private right of action exists under either Section 26(f) or Section 27(i) of the ICA. See id. at 432-36. The court reasoned that because neither section "explicitly provides for a private right of action . . . we must presume that Congress did not intend one." Id. at 432. The court found that this "presumption is strengthened by three additional features of the statute." Id. First, Sections 26(f) and 27(i) "do not contain rights-creating language" because they "only describe[] actions by insurance companies that are prohibited," i.e., they "focus on the person regulated rather than the individuals protected." Id. at 433. Second, Section 42 of the ICA, which provides for SEC enforcement of the ICA, weakens any implication that Congress intended to create a private remedy because the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id. Third, Congress' provision of a private right of action to enforce Section 36(b) of the ICA "suggests that omission of an explicit private right to enforce other sections was intentional." Id.

As discussed below, applying Olmsted's analytical framework to plaintiff's claim under Section 36(a) of the ICA, it is apparent that the "text and structure" of the statute reveal no congressional intent to create a private right of action.

**B.     The Language And Structure Of Section 36(a) Manifest No Congressional Intent To Confer A Private Right Of Action**

The Court should dismiss plaintiffs' Section 36(a) claim because the text and

structure of Section 36(a) manifest no intent by Congress to confer a private cause of action.

Section 36(a) states in relevant part:

> The Commission is authorized to bring an action . . . alleging that a person serving or acting in one or more of the following capacities has engaged . . . or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts
>
> (1) as officer, director, member of any advisory board, investment adviser, or depositor . . . .
>
> If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive relief or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title.

15 U.S.C. § 80a-35(a).

Because, by its own terms, Section 36(a) does not provide for an express private

right of action, one "must presume that Congress did not intend one." Olmsted, 283 F.3d at 432;

see also W. Allis Mem'l Hosp., Inc. v. Bowen, 852 F.2d 251, 254 (7th Cir. 1988) ("A strong

presumption exists against the creation of . . . implied rights of action").  Several features of the

text and structure of the statute render this presumption conclusive.

First, Section 36(a) contains no "rights-creating language."  The statute is not

phrased with an "unmistakable focus" on granting "individual rights" or "entitlements."

Gonzaga, 536 U.S. at 284-85, 287; see also Sabree ex rel. Sabree v. Richman, 367 F.3d 180, 187-

88 (3rd Cir. 2004) (relying on Gonzaga and Sandoval in stating that both implied private rights

of action and statutory claims under Section 1983 "must be premised on an unambiguous

-23-

articulation and conferral of rights by Congress"). To the contrary, the plain focus of Section 36(a) is on empowering the **SEC** to file suit, providing only that "[t]he Commission is authorized to bring an action . . . ." 15 U.S.C. § 80a-35(a) (emphasis added). Thus here, as in Sandoval, Section 36(a) is "twice removed" from conferring individual rights because "[i]t focuse[d] neither on the individuals protected nor even on the [person] being regulated, but on the agencies that will do the regulating." Sandoval, 532 U.S. at 289; see also Gonzaga, 536 U. S. at 287 (statute directing the Secretary of Education not to disburse funds to educational institutions that release records to unauthorized persons was "two steps removed from the interests of individual students and parents" and "[did] not confer" any "individual entitlement").[10]

Second, Section 36(a) is not merely silent with regard to who may enforce it. Rather, Congress expressly and directly stated in the statute that "[t]he Commission is authorized to bring an action" for injunctive or other relief. 15 U.S.C. § 80a-35(a) (emphasis added). Again, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290; see also Olmsted, 283 F.3d at 433.

---

[10]    While Section 36(a) refers in passing to "investors," it does so only in the context of stating that, if the SEC establishes a violation of Section 36(a), a court should give "due regard to the protection of investors" in formulating appropriate relief in that action. 15 U.S.C. § 80a-35(a) (emphasis added). Obviously, it is one thing to say that a court should consider the "protection of investors" when awarding relief in an SEC action, and quite another to say that individual investors may bring their own actions. See Chamberlain v. Aberdeen Asset Mgmt. Ltd., No. 02 CV 5870, 2005 WL 195520, *1, *3 (E.D.N.Y. Jan. 21, 2005), vacated by 2005 WL 1378757, *1 (E.D.N.Y. Apr. 12, 2005) (holding that Section 36(a) cannot be enforced in a private action and noting that it mentions investors only in connection with the remedy to be awarded "after the Securities and Exchange Commission has established its allegations of breach of fiduciary duty").

Third, to the extent it is relevant, the drafting history of Section 36(a) belies a congressional intent to create a private right of action. In 1970, Congress split the original Section 36 into two subsections. Specifically, Congress added a new subsection, Section 36(b), creating a fiduciary duty on the part of investment advisors with respect to the receipt of compensation for services. See Pub. L. No. 91-547, 84 Stat. 113 (1970) (codified at 15 U.S.C. § 80a-35(b)). Congress also designated the original Section 36 as subsection (a), and made substantive changes to the type of conduct covered by the new Section 36(a) and the range of relief available to the SEC. Id.; see also S. Rep. No. 91-184, at 33, reprinted in 1970 U.S.C.C.A.N., 4897, 4931.

Significantly, Congress expressly provided for a private right of action under Section 36(b), but did not do so for Section 36(a). Compare 15 U.S.C. § 80a-35(b) ("An action may be brought . . . by the Commission, or by a security holder . . . .") with § 80a-35(a) ("The Commission is authorized to bring an action . . . ."). The express provision of a private right of action in Section 36(b) shows that, "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." Olmsted, 283 F.3d at 433 (quoting Touche Ross, 442 U.S. at 572); see also Three Rivers Ctr. for Indep. Living v. Hous. Auth., 382 F.3d 412, 420-21 (3rd Cir. 2004) (favorably citing Olmsted for "observing that in the Investment Company Act of 1940 Congress explicitly provided a private right of action to enforce some provisions of the statute but not others"). Moreover, the fact that Congress used different language in the two subsections is clear evidence that it intended a different result. See, e.g., Russello v. United States, 464 U.S. 16, 23 (1983) ("We refrain from concluding there that the differing language in the two subsections has the same meaning in each").

In the wake of Sandoval and Olmsted, every district court in this circuit to address the issue has refused to find a private right of action under other sections of the ICA whose text

-25-

and structure, like ICA § 36(a), do not indicate a congressional intent to create individual rights. See, e.g., meVC Draper Fisher Jurvetson Fund I Inc. v. Millennium Partners, L.P., 260 F. Supp. 2d 616, 621-23 (S.D.N.Y. 2003) (finding no private right of action under ICA § 12(d)(1)(a) in light of Olmsted); In re Merrill Lynch Research Reports, 272 F. Supp. 2d at 259 n.14 (applying Olmsted to find no private right of action under ICA §34(b)).  It is thus no surprise that in the most recent decision from the Eastern District of New York, the court held that "when Olmsted and Sandoval are applied to ICA Section 36(a), it is evident that the provision does not give rise to a private right of action." Chamberlain, 2005 WL 195520, at *4 (emphasis added).[11]  In reaching that conclusion, the court relied on each of the factors discussed above, i.e., (1) the lack of any rights-creating language, (2) the fact that Congress expressly granted only the SEC the authority to bring an action alleging violation of fiduciary duties, and (3) the "implication . . . that if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." See id. at **2-3.[12]

Indeed, just last month, the court in Mutchka dismissed one of the cookie-cutter "failure to file" case's Section 36(a) claim because no private right of action exists under that

---

[11]    While this opinion was vacated by an April 12, 2005 Order, the court specifically noted that the vacator did "not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued order," but was "granted simply in order to permit the parties to proceed to settlement." See Chamberlain, 2005 WL 1378757, at *1.

[12]    Plaintiff may attempt to rely upon pre-Sandoval cases holding there is an implied private right of action under Section 36(a) of the ICA.  As noted above, however, Sandoval explicitly cautioned courts that these older decisions allowed implied rights of action under a lesser standard than is currently the law and thus belong to a now rejected "ancien regime." Sandoval, 532 U.S. at 287.  In Chamberlain, the court correctly observed that the "Olmsted court listed among these cases representing the ancien regime a number of cases finding private rights of action under ICA § 36(a)." Chamberlain, 2005 WL 195520, at *2; see also Olmsted, 283 F.3d at 434 n.4 (listing six pre-Sandoval Section 36(a) cases).

section of the ICA.  Like Chamberlain, the Mutchka court relied on Olmsted to find that no right

of action exists under ICA § 36(a).  See Mutchka, 2005 WL 1414304, at *4 ("This Court is

persuaded by the reasoning in Olmsted and finds that Congress did not intend to create a private

right of action in Section 36(a)").

Accordingly, as the Mutchka and Chamberlain courts correctly concluded, there is

no implied private right of action under Section 36(a).  Count III should be dismissed as a matter

of law.[13]

## POINT V

### COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFF
### FAILS TO STATE A CLAIM UNDER SECTION 36(B) OF THE ICA

In Count IV, plaintiff alleges that the Advisor Defendant violated Section 36(b) of

the ICA -- a provision which governs excessive advisory fees.  Because plaintiff has not alleged

that the Advisor Defendant charged excessive fees, but instead alleges only general breaches of

---

[13]   Even were the Court to imply a private right of action, it should still dismiss plaintiff's
Section 36(a) claim because plaintiff has failed to allege any facts showing that the
defendants engaged in a breach of fiduciary duty involving personal misconduct.  Section
36(a) empowers the SEC to seek redress for an "act or practice constituting a breach of
fiduciary duty involving personal misconduct . . . ."  15 U.S.C. § 80a-35(a) (emphasis
added).  See Olesh, 1995 WL 500491 at *20 (rejecting plaintiffs' "attempt to invoke
[Section] 36(a)" because of failure to allege facts showing personal misconduct).
Moreover, this claim should also be dismissed insofar as it relates to class actions whose
proof of claim filing deadlines were after the statute of limitations has run.  Courts have
held that the statute of limitations for claims for implied rights of action under the ICA is
one year after the discovery of the claim, or after such discovery should have been made
by the exercise of reasonable diligence, and no more than three years after the violation
occurred.  See, e.g., In re Dreyfus Aggressive Growth Mut. Fund Litig., 2000 WL 10211,
at *3 (stating that one-year/three-year statute of limitations applies to claims under the
1940 Act).  Thus, plaintiff's claim under Section 36(a) must be dismissed with respect to
at least the securities class actions listed in the Complaint that had a deadline to submit
proofs of claim prior to January 12, 2002.

fiduciary duty unrelated to advisor compensation, this claim should be dismissed.  This count also fails because plaintiff does not seek to recover on behalf of the Funds.

**A.   Count IV Should Be Dismissed Because Plaintiff Does Not Plead A Claim For Excessive Advisory Fees**

Count IV should be dismissed because, to put it simply, plaintiff's complaint does not plead an excessive fees case.  Section 36(b) of the ICA provides, in pertinent part, that the "investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof . . . ."  15 U.S.C. § 80a-35(b).  The statute "was addressed to the problem that 'adviser's fees, generally stated as a percentage of the market value of the managed assets, which had been altogether reasonable when a fund was launched, may have become unreasonably high when the fund grew to enormous size.'"  Strougo v. BEA Assocs., No. 98 Civ. 3725, 1999 WL 147737, *1, *3 (S.D.N.Y. Mar. 18, 1999) (internal citation omitted).

Given that specific purpose, courts have considered ICA § 36(b) as providing a "very specific, narrow federal remedy."  Green v. Fund Asset Mgmt. L.P., 286 F.3d 682, 685 (3d Cir. 2002); see also Mutchka, 2005 WL 1414304, at *3 (stating that "Section 36(b) is limited in scope").  The statute "was enacted 'to address a narrow area of concern:  the negotiation and enforcement of payment arrangements between the investment adviser and its fund' . . . not to provide a cause of action separate from 36(a) to govern the adviser's general performance or financial advice with respect to particular transactions.'"  Strougo, 1999 WL 147737, at *3 (internal citation omitted); see also Green v. Nuveen Advisory Corp., 295 F.3d 738, 744 n.9 (7th Cir. 2002) ("fund mismanagement issues" are not within the purview of Section 36(b)); Rohrbaugh v. Inv. Co. Inst., Civ. A. No. 00-1237, 2002 WL 31100821, *1, *8 (D.D.C. July 2,

2002) ("Section 36(b) does not apply to every alleged breach of fiduciary duty by an investment adviser"); <u>Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.</u>, No. Civ. A. 01-5734, 2004 WL 1459249, *1, *7 (D. N.J. Feb. 9, 2004) ("those courts analyzing § 36(b) have emphasized its inapplicability to allegations of corporate mismanagement").

  And, rather than establishing a general fiduciary duty, Section 36(b) imposes a limited fiduciary duty on fund advisors only "with respect to determining and receiving their advisory fees." <u>Green</u>, 286 F.3d at 685. Therefore, the Second Circuit has held that, to state a claim under Section 36(b), a plaintiff must allege that the "adviser-manager" charged a "fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." <u>Gartenberg v. Merrill Lynch Asset Mgmt., Inc.</u>, 694 F.2d 923, 928 (2d Cir. 1982).

  To survive a motion to dismiss a Section 36(b) claim, "a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.'" <u>Levy v. Alliance Capital Mgmt. L.P.</u>, No. 95 Civ. 4672, 1998 WL 744005, *1, *2 (S.D.N.Y. Oct. 26, 1998) (internal citation omitted), <u>aff'd</u> 189 F.3d 461 (2d Cir. 1999); <u>see also</u> <u>Yampolsky v. Morgan Stanley Inv. Advisers Inc.</u>, No. 03 Civ. 5896, 2004 WL 1065533, *1, *2 (S.D.N.Y. May 12, 2004). Rather, "a plaintiff must allege <u>facts</u> that, if true, would support a claim that the fees at issue are excessive." <u>Levy</u>, 1998 WL 744005, at *2 (emphasis added).

  Here, plaintiff does not allege that the advisory fees were excessive. Nor does he aver that any advisory fee was "so disproportionately large that it bears no reasonable relationship to the services rendered." <u>Gartenberg</u>, 694 F.2d at 928. Instead, his entire Complaint focuses on an alleged breach of fiduciary duty that is wholly unrelated to the amount

-29-

of advisory fees.[14]  Even assuming that these factual allegations were true, this is not the type of

conduct that is governed by Section 36(b).  To hold otherwise would allow plaintiffs to attack

literally any aspect of the investment advisor's services under the guise of Section 36(b).

Consequently, when faced with the same "failure to file" allegations found in plaintiff's

complaint, the court in Mutchka dismissed plaintiffs' Section 36(b) claim for this very reason.

See 2005 WL 1414304, at *3 ("To conclude that any fee is excessive merely because investment

advisors allegedly have breached some other fiduciary duty is inconsistent with the meaning of

the statute and thus is rejected by this Court").  Because plaintiff alleges no facts that, if true,

would establish that the fees the investment advisor received for managing the funds were in any

way disproportionate to the services rendered, plaintiff's Section 36(b) claim fails as a matter of

law.

> **B.     Plaintiff Fails To State A Claim Under Section 36(b) Because He Does Not
> Seek To Recover On Behalf Of The Funds**

Plaintiff also fails to state a claim because he does not seek to recover on behalf of

the Funds.  As Section 36(b) makes clear, a shareholder claim must be brought "on behalf of" an

investment company.  While the Supreme Court has held that this language does not require

Section 36(b) claims to be brought derivatively, it has also made clear that "any recovery

obtained in a Section 36(b) action will go to the company rather than the plaintiff."  Daily

Income Fund, Inc., 464 U.S. at 535 n.11.  Here, plaintiff does not seek to recover on behalf of the

Funds, choosing, instead, to seek recovery for himself personally.  See Compl. p. 20 (seeking

---

[14]     In fact, plaintiff's entire theory is inconsistent with a claim of excessive fees.  Plaintiff
alleges that the Funds failed to recover money that belonged to the Funds.  Any such
failure would decrease -- not increase -- advisory fees, as such fees are based upon the
asset value of the Funds.

compensatory and punitive damages on behalf of the "the Class"). Because plaintiff cannot

recover individually under Section 36(b), he has failed to state a claim.[15]

## POINT VI

### COUNT V FAILS TO STATE A CLAIM
### UNDER SECTION 47(B) OF THE ICA AND SHOULD BE DISMISSED

In Count V, plaintiff relies on Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b), to

attempt to void the "Agreements between the Advisor Defendants (and the Parent Company and

Other Affiliates) and the Funds" and to recover all funds paid under these contracts "during the

time period that the violations occurred." See Compl. ¶¶ 47-48. This count should be dismissed

because plaintiff: (1) lacks standing to sue under Section 47(b); (2) fails to plead a viable claim

under any section of the ICA; and (3) fails to plead that any advisory contracts were illegal.

**A.      Plaintiff Has No Standing To Sue Under Section 47(b)**

First, Count V fails because plaintiff has no standing to sue under Section 47(b).

Section 47(b) states in relevant part:

> (b) Equitable results; rescission; severance.
>
> > (1) A contract that is made, or whose performance involves, a
> > violation of this subchapter, or of any rule, regulation, or
> > order thereunder, is unenforceable by either party (or by a
> > nonparty to the contract who acquired a right under the
> > contract with knowledge of the facts by reason of which the
> > making or performance violated or would violate any
> > provision of this subchapter or of any rule, regulation, or
> > order thereunder) . . . .

---

[15]    Moreover, under Section 36(b), "[n]o award of damages shall be recoverable for any
period prior to one year before the action was instituted. 15 U.S.C. § 80a-35(b)(3).
Therefore, even were plaintiff's ICA § 36(b) claim not deficient as a matter of law, the
claim should still be dismissed with respect to at least those class actions listed in the
Complaint with proof of claim filing deadlines prior to January 12, 2004.

> (2) To the extent that a contract described in paragraph (1)
> has been performed, a court may not deny rescission <u>at the
> instance of any party</u> . . . .

<u>See</u> 15 U.S.C. § 80a-46(b) (emphasis added).  As the statute makes clear, only the parties to the

advisory agreements have standing to seek Section 47(b) remedies.  <u>See</u> <u>Lessler v. Little</u>, 857

F.2d 866, 874 (1st Cir. 1988) (affirming dismissal of Section 47(b) claim because "a shareholder

. . . lacks standing to pursue on his own claims properly belonging to the corporation").  Here,

plaintiff is not a party to any of the advisory agreements.  Therefore, he has no standing to sue

under Section 47(b).[16]

### B.    Plaintiff's Claim Under Section 47(b) Fails Because He Cannot Establish An Underlying Violation Of The ICA

In addition, plaintiff's claim fails because Section 47(b) allows for rescission only

for a contract that "is made, or whose performance involves, a violation of this subchapter, or of

any rule, regulation, or order thereunder."  15 U.S.C. § 80a-46(b).  Thus, a contracting party "can

seek relief under Section 47 only by showing a violation of some other section of the Act."

<u>Tarlov v. Paine Webber Cashfund, Inc.</u>, 559 F. Supp. 429, 438 (D. Conn. 1983); <u>cf.</u> <u>Somogyi v.</u>

<u>Butler</u>, 518 F. Supp. 970, 981 n.11 (D. N.J. 1981) (noting that Section 29 "presupposes a

violation of a separate provision of the [Exchange] Act"); <u>see also</u> <u>Mutchka</u>, 2005 WL 1414304

at *5 (dismissing Section 47(b) claim in "failure to file" complaint because the underlying ICA

---

[16]    Similarly, Courts have also recognized that, under Section 47(b)'s "counterpart" in the Securities Exchange Act of 1934 (the "Exchange Act"), <u>i.e.</u>, Section 29(b), 15 U.S.C. § 78cc(b), shareholders who are not parties to the agreement have no right to set it aside. <u>See</u> <u>Cohen v. Citibank, N.A.</u>, 954 F. Supp. 621, 626 (S.D.N.Y. 1996) (a plaintiff must show "he is in contractual privity with the defendant" to bring a Section 29 claim).  And, courts have reached the same conclusion with regard to Section 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-15, another one of Section 47(b)'s counterparts. <u>See, e.g.</u>, <u>Clark v. Nevis Capital Mgmt., LLC</u>, 04 Civ. 2702, 2005 WL 488641, *1, *13 (S.D.N.Y. Mar. 2, 2005) (citing numerous cases holding that "only parties to an investment advisory contract may sue for rescission under section 215").

claims had been dismissed).  Because, as shown above, plaintiff has no viable substantive claims

under the ICA, his Section 47(b) claim -- dependent on the presence of such viable claims -- fails

as a matter of law.

> **C.**     **Plaintiff's Section 47(b) Claim Fails Because He Does Not Allege That The
> Advisory Agreements, Either On Their Face, Or As Necessarily Performed,
> Violated The ICA**

     Finally, Count V should be dismissed because plaintiff does not allege that the

advisory contracts, as drafted or as necessarily performed, violate the ICA.  Not every breach of

fiduciary duty gives rise to a Section 47(b) claim.  By its own terms, Section 47(b) applies only

to "[a] contract that is made, or whose performance involves, a violation of this subchapter, or of

any rule, regulation or under thereunder." 15 U.S.C. § 80a-46(b) (emphasis added).  Therefore,

to violate Section 47(b), the contract, as written, must violate the ICA, or the contract must

require performance which necessarily would violate the ICA.  Indeed, to apply this section to an

advisory contract that just happens to be in place when the adviser breaches a duty unrelated to

the contract would render the statutory language superfluous.  See generally, United States v.

Peterson, 394 F.3d 98, 106 (2d Cir. 2005) (noting that it is a "well-known canon of statutory

construction that a statute should not be construed to render a word or clause inoperative").

     To interpret Section 47(b), courts frequently look to cases decided under Section

29(b) of the Exchange Act, another federal securities law provision that sets forth circumstances

under which a contract can be voided or rescinded.  See Mills v. Elec. Auto-Lite Co., 396 U.S.

375, 387 (1970) (using cases analyzing Section 47 to address a question under Section 29 because the two statutes are "counterparts").[17]

  To state a claim under Section 47(b)'s analogue, Section 29(b), a plaintiff must allege that the contract is "inherently violative" of the 1934 Act or the regulations thereunder. Komanoff v. Mabon, Nugent & Co., 884 F. Supp. 848, 857 (S.D.N.Y. 1995); see also Cohen, 954 F. Supp. at 626 (to establish a Section 29(b) violation, a plaintiff must show that the contract involved a prohibited transaction); Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y. 1981) (holding that under Section 29(b) "only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts"), aff'd, 672 F.2d 901 (2d Cir. 1981).

  Given the strong similarity between Sections 29(b) and 47(b), it follows that Section 47(b) remedies likewise are only available if the text of the advisory agreements violates the ICA or if the performance of the agreements would necessarily violate the ICA. Here, plaintiff's claims have nothing to do with the agreements. Plaintiff does not allege that the contracts, as written, required the Advisor Defendant not to file proofs of claim; nor does he allege that the agreements could not be performed absent such a failure. Thus, plaintiff has not established that the advisory agreements violated the ICA, either by their terms or through their performance. Therefore, plaintiff has no remedy under Count V and this claim should be dismissed.

---

[17]  The relevant provisions of Section 29(b) and Section 47(b) are substantially identical in substance. Section 47(b) states that it applies to "a contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder," 15 U.S.C. § 80a-46(b), while Section 29(b) applies to "[e]very contract made in violation of any provision of this subchapter or of any rule or regulation thereunder, and every contact . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder," 15 U.S.C. § 78cc(b).

## POINT VII

## <u>PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED</u>

Plaintiff's state law claims for negligence and breach of fiduciary duty (Counts I and II) should be dismissed for several reasons.

As an initial matter, if the Court dismisses plaintiff's federal claims under the Investment Company Act, it should decline to exercise supplemental jurisdiction over plaintiff's state law claims for negligence and breach of fiduciary duty. <u>See</u> 28 U.S.C. § 1367; <u>see also</u> <u>Mutchka</u>, 2005 WL 1414304, at *6 (refusing to allow plaintiffs, in "failure to file" action, to replead their state law negligence and fiduciary duty claims because there was "no longer any basis for federal jurisdiction in light of the rulings on Section 36(a), Section 36(b), and Section 47(b) claims under the ICA"); <u>Olesh</u>, 1995 WL 500491, at *6 (declining to consider plaintiffs' state law fiduciary duty claim, as the court dismissed the complaint's federal claims under ICA Sections 15(f) and 36(b)).

Moreover, as discussed fully above, plaintiff's state law claims should also be dismissed as plaintiff:  (a) lacks standing to bring these claims (<u>see</u> Point I, <u>supra</u>), (b) fails to plead sufficient facts to support these counts (<u>see</u> Point II, <u>supra</u>), and (c) has improperly brought his state law claims as direct (and not a derivative) actions (<u>see, e.g.</u>, <u>Mutchka</u>, 2005 WL 1414304, at **5-6 (dismissing "failure to file" complaint's state law negligence and fiduciary duty claims for failure to bring them derivatively); <u>Danielewicz v. Arnold</u>, 769 A.2d 279, 278-86 (Md. Spec. App. 2001) (affirming dismissal of breach of fiduciary duty claim for shareholder's lack of standing to sue in an individual capacity)) (<u>see</u> Point III, <u>supra</u>).

Finally, Count I must also be dismissed because plaintiff has failed to plead a cognizable breach of fiduciary duty claim under Delaware and Maryland law.  Delaware "distinguishes between the duty of care and the duty of loyalty."  <u>In re Reliance Sec. Litig.</u>, 135

F. Supp. 2d 480, 520 n.7 (D. Del. 2001).  A claim for breach of loyalty "requires some form of self-dealing or misuse of corporate office for personal gain."  Id. (internal citation omitted). While to demonstrate a breach of duty of care, "plaintiffs must overcome the presumption, known as the business judgment rule, that the defendant directors have acted on an informed basis and in the honest belief they acted in the best interest of the corporation."  Id. (internal citation omitted).  In stating "a claim for a breach of the duty of care, the plaintiff must allege more than simple negligence."  Werner v. Miller Tech. Management, L.P., 831 A.2d 318, 331 n. 51 (Del. Ch. 2003).  Even assuming that defendants failed to cause the Funds to file proofs of claim, plaintiff's complaint pleads no facts demonstrating that defendants acted in bad faith, engaged in self-dealing, or recklessly or intentionally refused to file proofs of claims on behalf of the Funds.[18]  At best, plaintiff has stated a claim for simple negligence -- which is not sufficient to demonstrate a breach of fiduciary duty under Delaware law.  Id.

Plaintiff must overcome even higher hurdles to state a claim for breach of fiduciary duty under Maryland law.  Maryland does not recognize an omnibus tort for breach of fiduciary duty.  See Kann v. Kann, 690 A.2d 509, 521 (Md. 1997) ("we hold that there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries"). Rather, under Maryland law, "identifying a breach of fiduciary duty [is] the beginning of the analysis, and not its conclusion."  Id.  A plaintiff pursuing such a claim is also "required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to [the] client's problem."  Id.

---

[18]    While plaintiff argues in his Complaint that defendants "acted with reckless and willful disregard" for plaintiff's rights, in order to support a claim for punitive damages (Compl. ¶ 34), such conclusory statements, unburdened by allegations of concrete fact, need not credited by the Court.  See Papasan v. Allain, 478 U.S. 265, 286 (1986) ("we are not bound to accept as true a legal conclusion couched as a factual allegation").

Moreover, Maryland courts will not recognize a claim for breach of fiduciary duty when other remedies exist. See Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 803 (D. Md. 1998) (dismissing claim for breach of fiduciary duty because "Maryland recognizes no 'universal or omnibus tort for redress of breach of fiduciary duty,' at least in a situation where other remedies exist"); see also Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc., 190 F. Supp. 2d 785, 801 (D. Md. 2002) (holding that "there is no independent tort for breach of fiduciary duty in Maryland; rather, "a breach of fiduciary duty would continue to be part of other causes of action"). And, even when breaches of fiduciary duty are recognized, Maryland courts will apply the business judgment rule, requiring plaintiffs to rebut the presumption "that directors of a corporation acted in good faith and in the best interest of the corporation." Wittman v. Crooke, 707 A.2d 422, 425 (Md. Spec. App. 1998).

Here, plaintiff's fiduciary duty claim fails under Maryland law because his Complaint does not "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to [the] client's problem." Kann, 690 A.2d at 521. Indeed, while "directors occupy a fiduciary relation to the corporation and all its stockholders . . . they are not trustees for the individual stockholders . . . ." Danielewicz, 769 A.2d at 285 (internal quotation omitted). And if the directors are not trustees to the individual stockholders, then certainly Funds' investment advisor -- which has a contractual relationship with the funds -- is not a trustee to the funds either. Thus, plaintiff, as an individual shareholder, cannot even identify a separate state law fiduciary duty directly owed to him, as opposed to one owed to the Funds themselves. Plaintiff's claim is at most one for simple negligence -- a claim that plaintiff separately pleads in Count II. Accordingly, given that another remedy exists to address the alleged harm, no action for breach of fiduciary duty would be recognized under Maryland law. See Kerby, 992 F. Supp. at 803.

Thus, for all these reasons, plaintiff's state law claims, like his federal claims under the Investment Company Act, are deficient as a matter of law and should be dismissed in their entirety.

\* \* \*

## CONCLUSION

For all of the aforementioned reasons, Defendants UBS Global Asset Management (New York) Inc. and Margo N. Alexander respectfully request that this Court dismiss plaintiff's Complaint in its entirety, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:  July 15, 2005

Respectfully submitted,

**DECHERT LLP**

By: _____

William K. Dodds (WD-4861)
Adam J. Wasserman (AW-4714)

30 Rockefeller Plaza
New York, NY  10112-2200
Phone:  (212) 698-3500
Fax:      (212) 698-3599

*Counsel for Defendants UBS Global Asset Management (New York) Inc. and Margo N. Alexander*